UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| DAVID HANSON,<br><br>    Plaintiff,<br>    v.<br><br>EQUILON ENTERPRISES LLC, DBA<br>SHELL OIL PRODUCTS US,<br><br>    Defendant.<br>_____/ | No. C 14-02674 LB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**<br><br>[ECF No. 12] |

### INTRODUCTION

Plaintiff David Hanson sued Equilon and Pacific Gas and Electric Company ("PG&E") in state court for negligence. Mr. Hanson dismissed the claims against PG&E (resulting in diversity of citizenship of the remaining parties), and over three months later, Equilon removed the case to federal court. Now, Mr. Hanson moves to remand the action. Because Equilon did not timely remove the case to federal court within 30 days after Mr. Hanson voluntarily dismissed PG&E, the court **GRANTS** Mr. Hanson's Motion to Remand.

### STATEMENT

### I. FACTUAL ALLEGATIONS

On or about August 7, 2012, Plaintiff David Hanson was employed as a lineman by Emcor

C 14-02674
ORDER

Group, Inc., doing business as Contra Costa Electric, Inc. *See* Complaint, ECF No. 1, ¶ 11.[1] Contra Costa Electric had been hired by Defendant Equilon Enterprises, doing business as Shell Oil Products US, and PG&E to replace a switch located near the top of an approximately 60-foot tall electrical pole at Equilon's Shell Martinez refinery. *Id.* ¶¶ 12, 17. Mr. Hanson alleges that Equilon and PG&E negligently failed to inspect, repair, and maintain their property, including the pole, and failed to warn him of unsafe conditions. *Id.* ¶¶ 18-21. As a result of this negligence, on August 7, 2012, Mr. Hanson fell approximately 60 feet from the electrical pole to the ground. *Id.* ¶ 22. He suffered serious injuries, including quadriplegia, a severe traumatic brain injury, pelvic fracture, left femur fracture, L2 lumbar fracture, and facial fractures. *Id.* Mr. Hanson has suffered some permanent disability, medical and related expenses, and loss of earnings and earning capacity. *Id.* ¶¶ 23-24. He seeks general and special damages of more than $36 million, plus interest, costs, and any other relief the court considers proper. *Id.* at 11; Statement of Damages, Notice of Removal Ex. D, ECF No. 1 at 45.

## II. JURISDICTIONAL ALLEGATIONS AND PROCEDURAL HISTORY

### A. The Complaint

On June 21, 2013, Mr. Hanson filed suit in San Francisco Superior Court. *See* Complaint, Notice of Removal Ex. A, ECF No. 1 at 7. The Complaint alleges that Mr. Hanson "is and was at all [times] mentioned herein, a resident of the city of Rio Vista, Solano County, California." *Id.* ¶ 2. Equilon "was at all times mentioned herein duly organized and existing under the laws of the State of Delaware with its principal place of business in Houston, Texas." *Id.* ¶ 3. Finally, "PG&E is and was at all times mentioned herein duly organized and existing under the laws of the State of California with its principal place of business in San Francisco, California." *Id.* ¶ 5.

Mr. Hanson apparently served PG&E and Shell in state court in August 2013. *See* Motion to Remand ("Motion"), ECF No. 12 at 2. The motion to remand also states that Equilon filed its Answer to the Complaint on September 11, 2013.[2]

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the page.

[2] Equilon did not attach the Answer to its Notice of Removal. *See* ECF No. 1.

C 14-02674
ORDER                                    2

**B. Mr. Hanson's Responses to Equilon's Interrogatories**

On October 28, 2013, Mr. Hanson served his responses to Equilon's form interrogatories. *See* Pl.'s Interrogatory Responses, Notice of Removal Ex. C, ECF No. 1 at 17.  The responses said that Mr. Hanson was born in La Crosse, Wisconsin, attended high school in Eau Claire, Wisconsin, and graduated from a technical college there in May 2002.  *Id.* at 19, 21.

In response to an interrogatory that asked for "the name, address, dates of employment, job title, and nature of work" for each of his employers within five years of the incident, Mr. Hanson responded that he worked as a lineman for companies with addresses in (1) Rolling Meadows, Illinois from September 2009 to October 2009, (2) Iron Mountain, Michigan from January 2009 to July 2009, (3) Lombard, Illinois during an unspecified period (but the context of the time line suggests that it likely was in the period between July 2009 to November 2009), (4) Union, Illinois from March 2010 to June 2010, (5) Farmington, New Hampshire, in October 2011, (5) Portland, Oregon from June 2011 to September 2011, (6) Brownsville, Wisconsin from November 2009 to April 2011, and (7) Martinez, California from November 2011 to August 7, 2012.  *Id.* at 20-21.

In response to an interrogatory that asked for Mr. Hanson's current residence address, residence addresses for the past five years, and the dates Mr. Hanson lived at the addresses, Mr. Hanson answered that he lived in (1) Eau Claire, Wisconsin, from approximately 2007 to June 2011. (2) Orland, California, from approximately June 30, 2011 to June 2012, (3) Rio Vista, California, from approximately July 2012 to September 2013, and (4) Eau Claire, Wisconsin from approximately September 2013 to the present.  *Id.* at 20.

When Mr. Hanson moved back to Eau Claire, Wisconsin, in September 2013, he "required a medical transport plane to transport him from California to Wisconsin and an ambulance to transport him from the airport in Wisconsin."  *Id.* at 20, 28.  Because of the injuries caused by his fall, Mr. Hanson no longer can speak, read, or write English with ease.  *Id.* at 21-22.  He has not been able to work and anticipates that he "will not be able to return to any kind of work in the future."  *Id.* at 32. Mr. Hanson has received medical care for his injuries from providers in California and Wisconsin. *Id.* at 26-27.  At the time of the accident, Mr. Hanson had a California commercial driver's license, and he also may have had a Wisconsin driver's license.  *Id.* at 19.  Mr. Hanson's interrogatory

1  responses were verified by his father, Joel Hanson, who declares that he has power of attorney over
2  Mr. Hanson's legal matters. *Id.* at 42.

### C. The Dismissal of PG&E

On January 22, 2014, Mr. Hanson filed a Request for Dismissal without prejudice of Defendant PG&E (leaving only Equilon as a defendant) and served Equilon. *See* Notice of Removal Ex. B, ECF No. 1 at 14-15; Wong Decl. Ex. 3, ECF No. 12-4 at 1-2. After entry of dismissal on February 21, 2014, Mr. Hanson served Equilon with the Notice of Entry of Dismissal as to PG&E. *See* Notice of Removal Ex. B, ECF No. 1 at 14; Wong Decl. Ex. 43, ECF No. 12-5 at 1-2.

### D. The Notice of Removal and the Motion to Remand

On June 10, 2014, Equilon filed a Notice of Removal asserting diversity jurisdiction as the ground for removal. *See* Notice of Removal, ECF No. 1 at 1-4. It cited the Complaint's allegation that it was a Delaware corporation with its principal place of business in Texas. *Id.* at 2 (citing Complaint ¶ 3). It also alleged that Mr. Hanson "is domiciled in Wisconsin, as [he] currently resides in Wisconsin and receives medical treatment in Wisconsin." *Id.* Equilon also alleges that Mr. Hanson "is a citizen of either the State of Wisconsin or the State of California." *Id.*

On July 3, 2014, Mr. Hanson filed a motion to remand, arguing that Equilon's Notice of Removal (1) was untimely and (2) failed to show that its members were diverse from Mr. Hanson's citizenship and thus did not establish diversity jurisdiction. Motion for Remand, ECF No. 12.

On July 17, 2014, Equilon opposed the motion to remand, arguing that (1) its removal was timely filed within one year from the date the complaint was filed, and (2) it is a Delaware company with its principal place of business in Texas, and all of Equilon's members are Delaware entities too. *See* Opp'n, ECF No. 14 at 1-5; Borgmeier Decl., ECF No. 14-1. More specifically, Equilon's corporate secretary Lynn Borgmeier states that Equilon Enterprises LLC has two members: (1) SOPC Holdings West LLC, and (2) TMR Company. Borgmeier Decl., ¶¶ 1-3. SOPC Holdings West LLC has two members: Shell Oil Products Company LLC and Shell Oil Company. *Id.* ¶ 4. The only member of Shell Oil Products Company LLC is Shell Oil Company. *Id.* ¶ 5. Shell Oil Company is a corporation that is incorporated in the State of Delaware, with its principal place of business and corporate offices in Houston, Texas. *Id.* ¶ 6. TMR Company also is a corporation

1 incorporated in the State of Delaware, with its principal place of business and corporate offices in
2 Houston, Texas. *Id.* ¶ 7. Thus, based on the citizenship of its members, Equilon is a citizen of
3 Delaware and Texas. Opp'n, ECF No. 14 at 3-5.

### E. Hearing

The court held a hearing on the motion to remand on August 7, 2014. *See* Minute Order, ECF
No. 17.

## ANALYSIS

There is no dispute as to whether diversity jurisdiction actually exists now: the amount in controversy exceeds $75,000, and the parties (regardless of whether Mr. Hanson is domiciled in California or Wisconsin) actually are diverse because Equilon (and all of Shell's constituent companies) are domiciled in either Delaware or Texas. The issue instead is whether Equilon's notice of removal (based on diversity jurisdiction) was timely and, if it was, whether it established that the parties were diverse.

## I. LEGAL STANDARD

Because the federal courts are courts of limited jurisdiction, the removal statute is construed strictly. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); *see also Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988). The removing party bears the burden of establishing that the court has subject matter jurisdiction. *Ethridge v. Harbor House Restaurant*, 861 F.2d 1389, 1393 (9th Cir. 1988).

### A. Diversity of Citizenship Claims Are Removable

Equilon asserts diversity jurisdiction as the ground for removal. The parties do not dispute that the amount in controversy is $75,000. *See* Notice of Removal, ECF No. 1, ¶ 11 & Ex. D (statement of damages is over $35 million); 28 U.S.C. § 1446(c)(3)(A) (information related to the amount in controversy in response to discovery qualifies as "other paper"); *Kuxhausen v. BMW Fin'l Servs. NA LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013) (demand qualifies as "other paper" to establish the amount in controversy). The issue is diversity of citizenship, which for this state tort case means

UNITED STATES DISTRICT COURT
For the Northern District of California

that all parties to the action must be "citizens of different states." 28 U.S.C. § 1332(a).

### 1. Diversity of Citizenship for Individuals

A party is "domiciled" in the location in which he or she has established a "fixed habitation or abode," and the person must have "an intention to remain there permanently or indefinitely." *Owens v. Huntling,* 115 F.2d 160, 162 (9th Cir. 1940). A party's old domicile is not lost until a new one is acquired. *Barber v. Varleta,* 199 F.2d 419, 423 (9th Cir. 1952). A change in domicile requires the confluence of (a) physical presence at the new location with (b) an intention to remain there indefinitely. *See Owens,* 115 F.2d at 162.

For an individual, ascertaining domicile involves a number of factors, including "current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes." *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986). Statements concerning an individual's intent to change domiciles are accorded little weight when they conflict with objective facts. *Id.* (defendant's deposition regarding his alleged domicile in Hong Kong given little weight because his wife and children still lived in the United States). While physical presence is central, no one factor is controlling. *Rice v. Thomas*, 64 F. App'x 628 (9th Cir. 2003).

### 2. Diversity of Citizenship for Corporations

A corporation is a "citizen" of the state in which it was incorporated and the state in which it has its principal place of business. See 28 U.S.C. § 1332(c). A limited liability company "is a citizen of every State in which its individual owners/members are citizens." *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

**B. Diversity Jurisdiction Generally Must Exist at the Time a Case is Filed and Removed Unless a Plaintiff Moves or Voluntarily Dismisses Nondiverse Defendants**

Diversity generally must exist when the case is filed and removed. *See Strotek Corp. v. Air Transport Ass'n of America*, 300 F.3d 1129, 1131 (9th Cir. 2002). An exception is that diversity at the time of removal is sufficient if a plaintiff voluntarily dismisses all nondiverse defendants before the removal notice is filed. *See Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 696 (9th Cir.

2005); *Self v. General Motors Corp.*, 588 F.2d 655, 657 (9th Cir. 1978).  Another exception is that if there is no diversity when a case is filed, and the Plaintiff voluntarily moves to another state (creating diversity) before the removal notice is filed, then diversity at the time of removal is sufficient.  *See DeBry v. Transamerica Corp.*, 601 F.2d 480, 486-87 (10th Cir. 1779).

### C. Time for Removal and Notice of Grounds for Removal

In general, a defendant must file a notice of removal within 30 days after receipt of the first pleading in state court that sets forth a removable claim.  *See id.* § 1446(b)(1).  If removability is not certain, the 30-day period is measured from the point at which a defendant had notice that the case was removable: "If a case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may be ascertained that the case is one which is or has become removable." *Id.* § 1446(b)(3); *see infra* (discussing how "other paper" can include discovery).  In any event, removal based on diversity jurisdiction generally must be made within one year after the case is filed: *See* 28 U.S.C. § 1446(c)(1).

To trigger the 30-day period, the notice must be clear.  *See Harris*, 425 F.3d at 695-96.  Grounds for removal can be clear from the four corners of the complaint.  If they are not, then the 30-day removal period does not start running.  *See id.*  For example, a state court complaint that alleges the parties' residence but not their domicile (which is what is determinative for diversity purposes) is not removable on the grounds of diversity regardless of possible "clues" to their citizenship.  *See id.*  A defendant has no duty to investigate, even if he suspects there are grounds for removal or the complaint contains "clues" as to removability.  *Id.; Kuxhausen*, 707 F.3d at 1140.  Plaintiffs bear the risk stemming from their indeterminate pleadings as far as the 30-day clock is concerned.  *See id.*

Thus, a defendant may wait until a subsequent pleading or paper discloses the ground for removability before removing (subject to the general one-year outside limit on removal in non-CAFA diversity cases and the 30-day time period that the event triggers).  If a defendant discovers a basis for removability based on its own investigation (and no 30–day window is otherwise triggered under § 1446(b)(1) or (b)(3)), it can remove within the one-year period.  *See Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1123 (9th Cir. 2013).

Events triggering the thirty-day period include the plaintiff's voluntary dismissal of a non-diverse defendant. *See Harris*, 425 F.3d at 696; *Self v. General Motors Corp.*, 588 F.2d 655, 659 (9th Cir. 1978) (voluntary dismissal triggered 30-day window); *see Palmer v. Pneumo Abex, LLC*, No. C-10-0712 MMC, 2010 WL 1029480, at *1 (N.D. Cal. Mar. 18, 2010) (relying on *Self* for this proposition). Also, if the plaintiff creates complete diversity by voluntarily moving to another state within one year of filing suit, the defendant is entitled to remove within 30 days of receiving notice of the change. *See DeBry v. Transamerica Corp.*, 601 F.2d 480 (10th Cir. 1979).

Removability may be disclosed in "paper" other than the original complaint. *See* 28 U.S.C. § 1446(b)(3). The term "other paper" includes written discovery responses, among other things. *See Bea v. Encompass Ins. Co.*, No. CV-13-00008-JLQ, 2013 WL 1747910 (N.D. Cal. Apr. 23, 2013); *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1213 n.62 (11th Cir. 2007) (diversity of citizenship established in answers to interrogatories); *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992).

A defendant waives the right to remove by failing to timely file a notice of removal after a 30-day window has been triggered under Section 1446(b)(1) or (3). *See id.* at 1125.

**D.  Motions for Remand**

Filing a motion to remand is the proper way to challenge removal. *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). Remand to state court may be ordered either for lack of subject matter jurisdiction or, upon the timely filing of a motion to remand, for any defect in removal procedure. 28 U.S.C. § 1447(c). A motion to remand based on any defect other than subject matter jurisdiction must be made within 30 days after the filing of the notice of removal, but the court may consider whether it has subject matter jurisdiction over a case at any time. *Id.* When the court's subject matter jurisdiction is at issue, the court may remand sua sponte or on motion of a party, and the party who invoked the federal court's jurisdiction has the burden of establishing it. *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)).

## II. EQUILON'S NOTICE OF REMOVAL WAS UNTIMELY

The parties do not dispute that when Mr. Hanson initially served Equilon with the complaint in August 2013, there was no apparent basis for federal jurisdiction because the complaint asserts only a state cause of action, and it alleged Mr. Hanson's residence but not his domicile. *See* Complaint, ECF No. 1 at 7; *Harris*, 425 F.3d at 695-96 (allegations of residence alone insufficient to establish diversity jurisdiction). And there is no dispute that Equilon removed within one year. The issue is whether there was an event that triggered the 30-day removal period. Mr. Hanson contends that there are two potentially triggering events: (1) Equilon's notice from the October 2013 interrogatories that Mr. Hanson was a citizen of Wisconsin, and (2) Mr. Hanson's voluntary dismissal of the California defendant PG&E (filed on January 22, 2014 and served on Equilon on February 20, 2014). *See* Motion For Remand, ECF No. 12 at 4. Either way, Mr. Hanson asserts, Equilon's June 10, 2014 notice of removal was not filed within 30 days of the triggering event. *Id.*

The October 28, 2013 interrogatory responses gave notice about the following. Since 2007, Mr. Hanson resided only in California and Wisconsin: Wisconsin until June 2011, California from June 2011 to September 2013, and Wisconsin thereafter. His residence in California spanned the time of his employment with Contra Costa Electric in Martinez from 2011 to the accident in August 2012, and it continued for a year thereafter until he was medically transported to Wisconsin in September 2013. He required that medical transport via a medical transport plane and an ambulance because he could no longer walk, talk, write, or take care of his personal hygiene. He had a California commercial driver's license at the time of the accident and may have had a Wisconsin driver's license.

These facts do not necessarily rule out that Mr. Hanson remained a California citizen after he returned to Wisconsin. *See Rishell v. Jane Phillips Episcopal Mem. Med. Ctr.*, 12 F.3d 171, 173 (10 Cir. 1993) (incompetent person lacks the capacity to change domicile); *cf.* Notice of Removal, ECF No. 1, ¶ 9 (asserting that Mr. Hanson is domiciled in Wisconsin). They do establish that he was a citizen of either Wisconsin or California. *See supra* Analysis, I., C (discovery, including answers to interrogatories, can establish diversity of citizenship). Nothing suggests any connection to Delaware or Texas (Equilon's domicile) especially given Mr. Hanson's physical condition. And when Mr.

1 Hanson voluntarily dismissed PG&E, diversity of citizenship existed, regardless of whether he lived
2 in Wisconsin or California. This was an event triggering the 30-day period to remove.

3 Equilon nonetheless argues that the facts supporting removal are not unequivocally clear and
4 certain because the answers to the interrogatories showed only Mr. Hanson's residence and not his
5 domicile. *See* Opp'n, ECF No. 14 at 2-3. Fair enough, but that defeats only the argument that the
6 October 2013 discovery responses triggered the 30-day removal timeline and not the argument that
7 diversity existed (regardless of whether Mr. Hanson resided in California or Wisconsin) once Mr.
8 Hanson dismissed PG&E (the only California Defendant). At that point, Mr. Hanson argues,
9 diversity of citizenship exists either way.

10 Equilon counters conclusorily that it is Mr. Hanson's burden to show that he is not domiciled in
11 either Texas or Delaware, and he has not done that. *Id.* at 3. Of course, Equilon asserted in its
12 notice of removal – as it must to meet its burden to establish that removal jurisdiction is proper –
13 that Mr. Hanson is "domiciled in Wisconsin" and also "either the State of Wisconsin or the State of
14 California." Notice of Removal, ECF No. 1, ¶ 10; *see Lew*, 797 F.2d at 749. Put another way, it
15 relies on the same facts to assert that jurisdiction is proper that it argues defeats Mr. Hanson's
16 argument about a triggering event that established diversity of citizenship.

17 Equilon nonetheless argued at the hearing that absent an interrogatory asking for an answer
18 about domicile, a party's general answers to questions about where he has lived and worked do not
19 establish domicile, particularly for someone with a job that entails moving around (as Mr. Hanson's
20 lineman job did). That argument does not change the outcome here. A party's discovery responses
21 can give notice about domicile, and the only conclusion from Mr. Hanson's responses about where
22 he lived and worked – given his allegedly severe physical and neurological injuries– is that he was
23 domiciled in California or Wisconsin. Those facts were established definitively as of October 2013.

24 Thus, there was complete diversity as soon as Mr. Hanson voluntarily dismissed PG&E and
25 served Equilon. At the latest, that notice was February 20, 2014. The June 10, 2014 notice of
26 removal was more than 30 days later and was untimely. *See* 28 U.S.C. § 1446(b)(3). Mr. Hanson's
27 July 3, 2014 motion to remand was timely. *See* 28 U.SC. § 1447(c).

28

ORDER                                    10

**CONCLUSION**

The court GRANTS Mr. Hanson's motion to remand and REMANDS this action to San Francisco County Superior Court.

This disposes of ECF No. 12.

**IT IS SO ORDERED.**

Dated: August 8, 2014

_____
LAUREL BEELER
United States Magistrate Judge